UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DONATHAN F. HURST | CIVIL ACTION |
| VERSUS | NO. 14-222-SDD-RLB |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |

### NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 19, 2015.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONATHON F. HURST** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-222-SDD-RLB** |
| **CAROLYN W. COLVIN,**<br>**ACTING COMMISSIONER**<br>**OF THE SOCIAL SECURITY**<br>**ADMINISTRATION** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Donathon F. Hurst (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's applications for children's insurance benefits and supplemental security income. (R. Doc. 1). According to his applications, Plaintiff suffered from mild mental retardation and a learning disability. (Tr. 221-22, 225-30). These conditions became disabling and prevented him from working as of January 1, 2001. (Tr. 221, 225).[1] Having found all of the procedural prerequisites met (Tr. 1-3); the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this opinion.

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). References to the record of administrative proceedings filed in this case are designated by: (Tr. [page number(s)]).

I.  PROCEDURAL HISTORY

In November and December of 2010, Plaintiff filed applications for children's insurance benefits (Tr. 221-22) and supplemental security income (Tr. 225-30), alleging disability as of January 1, 2001 because of mild mental retardation and a learning disability. After the Commissioner initially denied Plaintiff's applications, he sought review before an Administrative Law Judge (ALJ). (Tr. 117-28).

An initial hearing was held on April 12, 2012. (Tr. 83-114). Plaintiff, represented by counsel, appeared and testified. (Tr. 89-111). A vocational expert also provided testimony. (Tr. 112-113). The ALJ began the hearing by informing counsel that Plaintiff's 1993 award of childhood benefits was not based on Plaintiff having met a listing and that those benefits were stopped in December of 1998 based on a finding of disability cessation. (Tr. 87, 89).[2] Because the ALJ found the 1998 cessation decision particularly relevant to whether Plaintiff now met a listing (Tr. 89-93), he rescheduled the hearing for a later date in order to obtain a copy of the 1993 decision and the 1998 cessation. (Tr. 94).

However, neither decision could be located. (Tr. 32, 317). The Commissioner was also unable to locate any of the evidence on which either decision was based. Therefore, the current record does not contain any actual evidence relative to Plaintiff's childhood benefits.

Although the earlier file could not be located, a second hearing was held on July 19, 2012. (Tr. 30-82). Plaintiff, represented by counsel, appeared and testified. A medical expert, Dr. Michael Chafetz, gave testimony relevant to the severity of Plaintiff's mental impairments. (Tr. 49-78). Dr. Chafetz is a psychologist hired by the Social Security Administration to provide

---

[2] Plaintiff was born on March 23, 1983. According to the hearing transcript, during his childhood, Plaintiff was awarded disability benefits based "on an application dated June 2, 1983." (Tr. 88). Plaintiff stopped receiving childhood benefits on December 24, 1998, following a finding of disability cessation by the Commissioner. (Tr. 87).

expert medical testimony in Clinical Psychology and Clinical Neuropsychology. (Tr. 220). Testimony was also provided by a vocational expert, Karen Harris. (Tr. 78-81).

The ALJ issued an unfavorable decision on December 27, 2012 (Tr. 17-26), finding Plaintiff had not been under a disability since January 1, 2001. Plaintiff's request for review was denied by the Appeals Council on February 27, 2014. (Tr. 1-3). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even

if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the

impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

The ALJ made the following determinations:

1. Because he was born on March 23, 1983, Plaintiff was under the age of 22 on January 1, 2001, the alleged onset date.

2. Plaintiff had not engaged in substantial gainful activity since January 1, 2001.

3. Plaintiff had one severe impairment — a learning disability.

4. Plaintiff's impairment(s) did not meet or medically equal the severity of a listing — specifically, Listing 12.05B, 12.05C or 12.05D.

5. Plaintiff had the residual functional capacity (RFC) to perform light work, except that he could only understand, remember and carry out simple instructions.

6. Plaintiff did not have any past relevant work.

7. Plaintiff was a "younger individual" (ages 18-49) on January 1, 2001.

8. Because he was in special education classes throughout his schooling, Plaintiff had a limited education. He was also able to communicate in English.

9. The transferability of job skills was not an issue in the absence of any past relevant work.

10. Considering Plaintiff's age, education, work experience and RFC, Plaintiff can perform jobs existing in the national economy, including "grounds maintenance worker" (DOT No. 408.687-010).

11. Plaintiff has not been under a disability between January 1, 2001 and December 27, 2012, the date of the ALJ's decision.

(Tr. 19-25).

## IV. DISCUSSION

Plaintiff raises several arguments in support of his appeal. (R. Doc. 11 at 15-27). First, Plaintiff contends the "ALJ's decision is based on 'facts' not contained in the record and the ALJ improperly relied on a prior decision as evidence of non-disability in this case." (R. Doc. 11 at 15-17). Next, Plaintiff suggests the "ALJ's conclusion that Plaintiff does not meet Listing 12.05 is contrary to law and unsupported by substantial evidence." (R. Doc. 11 at 17-24). More specifically, Plaintiff suggests the ALJ "applied an incorrect legal standard by concluding that Listing 12.05 requires a listing-level IQ score prior to age 22." (R. Doc. 11 at 20). The ALJ additionally rejected the listing-level IQ scores obtained by Dr. Lester Culver for an impermissible reason. (R. Doc. 11 at 21). Finally, and in the alternative, Plaintiff argues that "substantial evidence does not support the ALJ's RFC finding [because] medical expert testimony establishes that Hurst has a marked limitation in concentration, persistence, or pace." (R. Doc. 11 at 24-26).

Plaintiff contends that at step 3 the ALJ impermissibly relied on extra-record evidence that Plaintiff "received benefits as a child for a reason other [than] meeting the mental retardation listing and a prior ALJ found that [Plaintiff] was not disabled." (R. Doc. 11 at 19). The evidence Plaintiff refers to consists of a 1993 decision awarding Plaintiff childhood benefits and a 1998

cessation finding that Plaintiff was no longer under a disability.[3] The 1993 and 1998 decisions, along with the evidence on which they were based, are not part of the record. (Tr. 54-55, 317). Nonetheless, the transcripts from both the April 12, 2012 and the July 19, 2012 hearings show that the 1993 and 1998 decisions influenced the ALJ's opinion of the evidence.

During the first hearing, Counsel expressed her view that the previous decisions could not be relied on because they were not part of the record and there was no way of knowing the evidence on which they were based or the reasons for those decisions.[4] (Tr. 90). The relevant inquiry, according to Plaintiff's counsel, was limited to the information within in the current record. (Tr. 89-91). Dismissing this contention,[5] the ALJ advised Counsel, "you have an option. Well . . . you don't have an option actually. I've ordered the prior file to see if it even can be obtained," because:

> [T]he relevant fact is in 1998 . . . Judge Fishman upheld the cessation of benefits . . . And it was affirmed by the Appeals Council. That's the relevant fact. . . . I think you have a rather hard road [sic] to hoe given the fact that he did get a decision and it was a cessation and it was upheld. But we'll see.

(Tr. 93). After the 1993 and 1998 decisions, along with their corresponding evidence, could not be found, a second hearing was held on July 19, 2012. (Tr. 32, 317).

---

[3] The ALJ began the April 12th hearing by acknowledging that Plaintiff "was on benefits as a child," and asking Plaintiff's attorney if she was "aware of his application history," before explaining:

> All right. Then I'll give you some information. . . . He had a hearing before Judge Fishman, which resulted in an unfavorable decision dated December 24, 1998. He took it to the Appeals Council, and on June 14, 2001, the Appeals Council denied - - upheld the denial. . . . And when he was on benefits it was not for meeting any listing.

(Tr. 87-88).

[4] Indeed, the ALJ admitted during the second hearing that "the claimant had been placed on benefits" as a child. "We don't know why either." (Tr. 55).

[5] (April 12, 2012 Hearing Transcript, Tr. 91) (ALJ: "Well that's your judgement. . . It's mine to make."); (Tr. 91) (ALJ: "I'm asking for your argument and you tell me if I'm wrong, the fact that your client was found no longer disabled by the [SSA], which was determined as well by an [ALJ] . . . and affirmed by the [AC], has no validity or . . . the weight to accord is next to nothing . . . . Right?").

During the second hearing, the ALJ continued to reference (Tr. 54-58) the previous decisions and insist on their relevance, even asking the medical expert, Dr. Chafetz, whether they would prevent Plaintiff from now meeting Listing 12.05. (Tr. 55-58). When the medical expert echoed Plaintiff's argument that the earlier decisions were "all inference" because we "don't really know why the claim was denied," whereas his school records show deficits in adaptive functioning before age 22, the ALJ became argumentative.[6] For example, Plaintiff's attorney again suggested there could be a number of reasons for the 1998 denial — i.e., "the claimant did not attend . . . , his mother was severely diabetic at the time." (Tr. 57). The ALJ countered:

> ALJ:  And it could be - - he cheated and it could be - -
>
> ATTY:  So we cannot make - -
>
> ALJ:  - - everybody made a mistake.
>
> ATTY:  - - an inference on that.
>
> ALJ:  But we do - - yes, we can make inferences. Your client was put on benefits not for meeting a listing. . . . Your client was later found to have improved and a cessation determination was made. . . . We have those facts. We also have as a fact that . . . the impairment listing was not a mental health impairment listing that he was put on benefits for. . . . So the question is what inferences, if any, can be drawn from it and which of these inferences are more likely than not.

(Tr. 57-58). In response to Dr. Chafetz's testimony that Plaintiff should meet Listing 12.05 (Tr. 70-71), the ALJ retorted: "So you are comfortable - - this is remarkable." (Tr. 71).

In addition to the hearing, the ALJ continued to reference the 1993 decision and the 1998 cessation in his decision denying Plaintiff's application. (Tr. 21-23). With no record evidence of these prior decisions, this Court is unable to conduct any meaningful review of the sufficiency of

---

[6] (Tr. 55-58). (Tr. 56) ("ALJ: Well, actually I can tell you this . . . he was not put on for meeting a listing ; ATTY: I think these questions are a little bit - - we don't have the facts; ALJ: Well, we do have facts. And the question is what do those facts - - that we do have show.")

the ALJ's decision. This is problematic where, as here, the record shows that the ALJ relied on the prior decisions to support his weighing of the medical evidence and his step-three finding that Plaintiff did not meet Listing 12.05. (Tr. 21-23).

First, the ALJ relied, in part, on the 1998 decision to discredit record evidence of Listing-level IQ scores assessed by Dr. Lester Culver. (Tr. 21-22); (Tr. 89) ("ALJ: You have to prove that [Dr. Culver's] IQ scores - - if valid, existed before the attainment of age - - 22, and we know at least that your client had been put on benefits not for meeting a listing . . . . So why do those facts not militate against the validity of the IQ test . . . ?").

Second, the ALJ cited the earlier decisions to discredit Dr. Chafetz's opinion that Plaintiff's school records showed deficits in adaptive functioning before age 22, as required to meet the introductory paragraph of Listing 12.05. (Tr. 21-23, 68-69, 70-71, 89). The ALJ also partially relied on the 1993 and 1998 decisions to discredit Dr. Chafetz's testimony that the available evidence — Plaintiff's school records, work history, daily activities and Dr. Culver's IQ scores — indicated that Listing 12.05 had been met. (Tr. 21-23, 68-71).

Finally, the ALJ concludes his unfavorable finding at step 3 by citing the 1993 and 1998 decisions as evidence that Plaintiff did not meet Listing 12.05:

> The claimant was placed on Title 16 benefits as a child, not for meeting a listing, but for having two or more deficits in functioning . . . . He was found to no longer be disabled by an Administrative Law Judge on December 24, 1998, and that decision was affirmed by the Appeals Council on June 14, 2011.

(Tr. 23).

In his decision, the ALJ writes that Plaintiff received childhood benefits "for having two or more deficits in functioning under the Individualized Functional Assessment in place in [the] 1990s." (Tr. 23). There is no piece of record evidence supporting this statement. Therefore, by relying on the 1993 and 1998 decisions, the ALJ committed legal error. *See Nelson v. Apfel*, 131

F.3d 1228, 1236 (7th Cir. 1997) ("We agree with the district court that it was improper for the ALJ to consider evidence outside the record in determining the extent of [the claimant's] disability." ); *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990) (Reversing the Commissioner, in part, because the ALJ relied on outside evidence and "it is erroneous to rely on items not in the record."); *Green v. Shalala*, 13 F.3d 1346, at *3 (10th Cir. 1994) (agreeing that the ALJ committed reversible error in considering and relying on outside medical records to find a lack of credibility); *Myers v. Astrue*, 870 F. Supp. 2d 1164, 1170 (D. Colo. 2012) ("[I]t is clear the ALJ improperly relied on a statement made by Dr. Kennedy outside the record in find that claimant lacked credibility . . . . [T]hese procedural disparities were not clearly harmless. The ALJ's reliance on non-record evidence . . . at the very least influenced his final determination.").

Second, the court cannot conclude that the error was harmless as the ALJ relied on this outside evidence to discredit Dr. Culver's IQ scores, Dr. Chafetz's testimony, and Plaintiff's work history, school records and daily activities — all of which were favorable to Plaintiff's contention that he met Listing 12.05(B), (C) or (D) at step three.

To meet Listing 12.05, a claimant must first establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app'x 1 § 12.05. Additionally, a claimant must meet one of the severity criteria:

- B. A valid verbal, performance, or full scale IQ of 59 or less;

- C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

- D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, subpt. P, app'x 1 § 12.05(B)-(D).

If accepted as valid, Dr. Culver's IQ scores would satisfy the severity requirements for subparagraph B, and part of subparagraph C. (Tr. 341-46) (Dr. Culver found Plaintiff had a full scale IQ of 49 and a verbal IQ of 56.).

Dr. Culver's IQ scores would likewise raise a presumption that Plaintiff's intellectual disability manifested during the developmental period, as required by the introductory paragraph of Listing 12.05. *See Miller v. Astrue*, 2008 WL 8053474, at *3 n.1 (S.D. Tex. 2008); *Rowell v. Apfel*, 2000 WL 1449887, at *5 n.3 (E.D. La. 2000).[7]

As Dr. Chafetz testified, satisfaction of the introductory paragraph is also supported by evidence from Plaintiff's childhood that he was classified as mentally handicapped, diagnosed with a learning disability, participated in special education, and performed poorly while in school. (Tr. 68-69, 325-26). *See Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (the ALJ should have found that the claimant's impairment manifested itself during the developmental period where he attended special education classes and did not relate well with other children); *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1060-61 (C.D. Cal. 2010) (school records satisfied the early onset requirement where the claimant attended special education classes, tested below his

---

[7] As Plaintiff points out, the ALJ erroneously interpreted Listing 12.05's introductory paragraph as requiring listing-level IQ scores (70 or less) obtained before the age of 22. (Tr. 21-22). Contrary to the ALJ's legal interpretation of Listing 12.05, a substantial body of case law dictates that the introductory paragraph of Listing 12.05 neither requires a formal diagnosis of mental retardation nor the results of IQ testing conducted before age 22. *See, e.g. Durden v. Astrue*, 586 F. Supp. 2d 828, 832-33 (S.D. Tex. 2008) (fact that claimant did not have IQ scores evidencing significantly subaverage intellectual functioning within the developmental period did not preclude a finding of mental retardation or satisfaction of Listing 12.05); *Reyes v. Astrue*, 2008 WL 2225672, at *4 (W.D. Tex. May 28, 2008) (same).

grade level, and had difficulty relating to peers); *Lartigue v. Astrue*, 2011 WL 2670705, at *4 (W.D. La. June 15, 2011) ("[O]nset may be shown or supported by evidence of the impairment during the developmental period. In this case, the record contains evidence Lartigue attended special education classes, failed three grades, was promoted to the 11th grade because of his age and was/is illiterate."); *Fuller v. Astrue*, 2012 WL 3941775, at *8 (N.D. Tex. Sept. 10, 2012) (evidence demonstrated deficits in adaptive functioning manifested during the developmental period where claimant participated in special education and had poor math and reading skills); *Marsh v. Colvin*, 2014 WL 1511675, at *4 (S.D. Ind. April 16, 2014) (ALJ erred in finding claimant did not meet Listing 12.05C, where school records showed significantly subaverage intellectual functioning before age 22 as claimant "was in special education classes due to a mild mental handicap"; and claimant's had a full-scale IQ of 67 as an adult); *Walberg v. Astrue*, 2009 WL 1763295, at *9 (W.D. Wash. June 18, 2009) (participation in special education constitutes evidence of deficits in adaptive functioning during the developmental period).

    Moreover, Dr. Chafetz testified that evidence of Plaintiff's current deficits in adaptive functioning also tended to satisfy the introductory paragraph of Listing 12.05. (Tr. 68-71). For example, the record demonstrates that Plaintiff has been unable to maintain employment due to poor reading comprehension and an inability to understand his supervisor's instructions on how to perform the job. (Tr. 95, 106, 109, 110, 238, 239, 243, 248, 293, 343). Consistently, Dr. Chafetz testified that Plaintiff's inability to maintain employment demonstrated "marked difficulties in maintaining concentration, persistence, and pace." (Tr. 69). Plaintiff additionally does not function well in social settings. (Tr. 47) (Plaintiff testified that he does not like to socialize with many people beyond his family and his girlfriend because he is often teased.); (Tr. 345) (Dr. Culver consistently diagnosed "Psychosocial and Environmental Problems: Social –

one friend."); (Tr. 69) (Dr. Chafetz observed that Plaintiff "does not appear to be functioning socially with, you know, very much ease."). This evidence is indicative of deficits in intellectual and adaptive functioning, as required by Listing 12.05. *See Thompson v. Soc. Sec. Admin.*, 2013 WL 492357, at *11 (E.D. La. Feb. 8, 2013) (ALJ ignored record evidence showing deficits in adaptive functioning, including "his participation in special education, his reading comprehension was at K .5 level, he could not keep pace at Popeye's Chicken, he required assistance from coworkers when working at Old Time Farm Supply, among other things.").

Therefore, because the record contains evidence favorable to Plaintiff at step three, the ALJ's reliance on outside evidence to find that Plaintiff did not meet Listing 12.05 was not harmless. It is the Commissioner's duty to weigh the evidence in this case and resolve any conflicts in that evidence. The Court, however, is only able to review the record before it. The ALJ's reliance on prior decisions that are not in the record, or otherwise even made available to the claimant, deprives this Court of any opportunity of meaningful review. Therefore, remand is warranted for further proceedings consistent with the Court's opinion.[8]

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **VACATED** and that Plaintiff's appeal be **REMANDED** for further proceedings consistent with this opinion.

Signed in Baton Rouge, Louisiana, on August 19, 2015.

                                          **RICHARD L. BOURGEOIS, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**

---

[8] Because the Court finds the ALJ's error at step 3 warrants remand, it does not reach the remainder of Plaintiff's arguments on appeal.